BLANCHARD & BURRUS *et al.* *vs.* VANSYCKLE & COMPANY *et al.*

1. The act of 1881 gave a new remedy against insolvent traders; but if a firm had sold out their entire interest in their business, and had ceased to do business, the right to proceed against them under the act of 1881 did not exist, and t would be error to grant an injunction and appoint a receiver under a bill filed for that purpose.

2. Whilst it is true that, under the act of 1881, pre-existing liens are not to be interfered with, and parties with such liens are not to be hindered and delayed in the exercise of their usual common law remedies, yet if they voluntarily come in and ask to be made parties defendant to a bill filed under that act, and submit their liens to that investigation which a court of equity may exercise over them, and they are assailed for invalidity or cast under such suspicion as to induce the chancellor to put the property they are seeking to sell, in the hands of a receiver, they must abide by his judgment.

(a.) The chancellor having held the original defendants to be still traders when the bill was filed, all prior alienations and liens may be attacked as incidental to the power to collect and marshal the assets.

March 27, 1883.

Debtor and Creditor. Insolvency. Equity. Injunction and Receiver. Liens. Before Judge WILLIS.

Reported in the decision.

GOETCHIUS & CHAPPELL; THORNTON & HARGETT, for plaintiffs in error.

LITTLE & WILLIS; JAMES M. MOBLEY; CAMERON & WALTON, for defendants.

CRAWFORD, Justice.

On the 28th day of November, 1882, the defendants in error filed their bill, under the act of September 28th, 1881, against J. H. Cowsart & Company, alleging that they were traders engaged in business, indebted to complainants,

and insolvent. Wherefore they prayed the appointment of a receiver to take charge of the assets of the said firm, and an injunction restraining them from disposing of their stock of goods, or collecting any of the notes, accounts, or choses in action due to the said firm, or any member thereof, until the further order of the court.

The bill was sanctioned by the chancellor, a restraining order granted, and defendants required to show cause on the 6th day of December next thereafter, why an injunction should not be granted and a receiver appointed as prayed for by the bill. The hearing of the application was afterwards continued to the 25th day of January following.

On this day, Cowsart & Company showed for cause against the prayer of the bill, that on the 23d day of November, five days before the filing of complainants' bill, they had *bona fide* and for a valuable consideration sold all their stock of merchandise, store-fixtures, notes and accounts, on books or otherwise, to H. C. Kimbrough, and had from that time ceased to be traders or to do business as such.

Blanchard & Burrus, I. Joseph, president of the Pioneer Co-operative Company, and Wm. L. Tillman, on the day of the hearing for injunction and receiver, appeared before the chancellor and by petition set forth that they were lien creditors, having mortgage *fi. fas.* against Cowsart & Company upon all their stock of merchandise, notes, etc.; that their said mortgage was executed by the said Cowsart & Company, on the 10th day of November preceding the filing of complainants' bill; that they had foreclosed the same, and had the stock of goods levied upon by the sheriff of the county on the 20th day of January instant, the amount of which several mortgage *fi. fas.* was about twelve hundred dollars; and that the stock of merchandise, together with the amount due upon the books, etc., would not equal so much as that sum, and perhaps not the half thereof. Wherefore, the premises considered, they prayed

to be made parties defendant to said bill, that their petition be taken as their answer thereto, and that the chancellor would refuse the complainants' application for the granting of an injunction and the appointment of a receiver, so as to prejudice their rights as lien creditors upon the disposition of the aforesaid stock of merchandise. The chancellor, upon this petition, made the petitioners parties defendant to the bill, and proceeded to the hearing upon the complainants' application for injunction and receiver.

The complainants supported their bill by proof of their claims, the failure of the defendants, and that M. B. Kimbrough, one of the firm of Cowsart & Company, had said, on a day after the alleged sale of all the assets to H· C. Kimbrough, that he had been trying all that day to collect money due the firm, and that he promised the party to whom he was speaking that, if he would let him alone in business, he would do all he could to collect what was due on them.

The defendants, Cowsart & Company, in support of their answer, filed their joint affidavit of the truth of the facts therein set up, and that they had executed the mortgage to their co-defendants on the 10th day of November, preceding the sale, to H. C. Kimbrough on the 23d of the same month, and eighteen days before the filing of complainants' bill. Affidavits of other parties to the·sale to H. C. Kimbrough were offered, as well as to the fact that they had ceased to do business.

The defendants, Blanchard & Burrus, I. Joseph, president, etc., and W. L. Tillman, submitted their joint mortgage, with affidavits for foreclosure; their separate *fi. fas.* dated January 19, 1883; the levies entered thereon January 20, 1883; also affidavits showing that the value of the stock of goods on hand about the 27th day of December, 1882, was only from one thousand to twelve hundred dollars.

Upon the pleadings and proofs, after argument had, the chancellor granted the injunction, and appointed a receiver

with instructions to take charge of all the assets of Cowsart & Company, sell the goods after advertisement, collect the notes and accounts, and hold the proceeds until the further order of the court. To this ruling Blanchard & Burrus, I. Joseph, president, etc., and W. L. Tillman excepted.

As has been set forth in this opinion, the bill of complainants was filed under the act of 1881, with the view of accomplishing that which was done by the chancellor. The plaintiffs in error insist that under law, and the evidence before him, his judgment was erroneous, and we are asked to review and reverse that judgment.

1. The questions made by the bill were, whether the defendants in the bill were traders engaged in business? were they indebted to the complainants, and were they insolvent? It was alone upon the first of these two questions that any dispute arose. It was insisted that they had sold out their entire interest in their business, on the 23d day of November, 1882, to H. C. Kimbrough, and from that day had ceased to do business. If this be true, then the right to proceed against them under the act aforesaid did not exist, and the chancellor erred in granting the prayer of the complainants. It was, however, a question of fact to be determined by him, and unless he was without sufficient evidence to authorize his conclusion, his judgment must be affirmed. The law clothes him with power to hear and determine the proofs submitted; and we can only look into such proofs to see that he has not abused the power thus conferred upon him. In doing this, we find that he had the sworn bill of the complainants; the affidavits of parties, showing that the goods had remained without change of location, and were known and recognized as the stock of goods of H. Cowsart & Company; that the sale alleged to have been made, had been only five days before the filing of the bill; that after this sale, one of the partners said that he was then trying to collect the money due the firm, and if let alone in business, he

would do all that he could to collect what was due and pay up; that the money due the firm upon the books and otherwise, if the conveyance to H. C. Kimbrough was *bona fide*, belonged to him, and neither member of the firm was authorized to collect and pay up any other indebtedness. This statement was not denied. It is true that there was testimony adverse to this, but the chancellor saw fit to decide with the complainants; and, according to the uniform ruling of this court on this question, we will not reverse him on a matter of fact, where there was no abuse of the discretion exercised.

2. But it is said that he erred in granting the injunction and appointing a receiver, because he thereby interfered with the pre-existing liens of the mortgage creditors, and this is expressly forbidden by the act under which the bill was brought. In reply to this, it is insisted that there are matters of fact appearing upon the face of the papers themselves, and from all the circumstances of the case, to authorize the chancellor to place the assets of this firm in the hands of the receiver, until the rights of the parties may be inquired into and determined. The mortgage was a joint mortgage, purporting to have been made to secure Blanchard & Burrus $1000 in notes; I. Joseph, president, etc., $950, on notes and accounts; and Wm. L. Tillman $1500, on divers notes and accounts,—amounting in the aggregate to the sum of $3450. It was urged that this mortgage did not specify the debts which it was made to secure, and that the unsecured creditors were entitled to know exactly what debts had priority over their claims, and an opportunity to contest their validity in law; and especially so when the mortgage itself was so vague and uncertain as to the amounts, dates and character of the debts due. This they claimed was the more important, as the amounts for which they were foreclosed reached only the sum of about $1300, and the stock of goods was sufficient to cover that amount, whilst the mortgagees had also a transfer of the books and accounts, but which it was said

were being collected by one of the members of the firm, and therefore inconsistent with the idea of their having really parted with the title as claimed. In addition to this, it was urged that, even if the mortgages were valid, the goods were sufficient, or nearly so, to satisfy them, and the only fund from which the complainants, who were unsecured creditors, could hope to realize anything, was from the books, and they could be made available to them only through a receiver.

It is to be borne in mind that the chancellor obtained jurisdiction in this case against the original defendants upon the grounds named in the act of 1881, under his view of the facts presented to him at the hearing of the application for the granting of an injunction and the appointment of a receiver. The plaintiffs in error, being mortgage creditors, came voluntarily in, and asked to be made parties defendant to that bill, and set up their mortgage liens against the prayer of the complainants, who, upon the grounds above stated, attacked their liens; and the chancellor, under the facts before him, both as to the original and these defendants, held that the ends of justice would be more certainly reached by holding up the assets until there might be an investigation of all the facts of the case.

Whilst it is true that, under the act of 1881, pre-existing liens are not to be interfered with, nor are parties with such liens to be hindered and delayed in the exercise of their usual common law remedies, yet if they voluntarily come in, and ask to be made parties defendant to a bill filed under that act, and submit their liens to that investigation which a court of equity may exercise over them, and they are assailed for invalidity, or cast under such suspicion as to induce the chancellor to put the property they are seeking to sell in the hands of a receiver, they must abide his judgment. But still, if the liens are valid, they must be preserved, and it will be the duty of the chancellor, under the law, to see that this is done.

v 70–19

The chancellor having held the original defendants to be still traders when the bill was filed, all prior alienations and liens may be attached as incidental to the power to collect and marshal the assets. See *Comer & Company vs. Coates & Company*, 69 *Ga.*, 491.

Whether this court would have held under the facts made to appear to the chancellor below, that an injunction should have been granted and a receiver appointed, is not the question before us; we are only to decide whether he committed an error of law, or abused that discretion with which he is empowered to pass on the facts as they were submitted.

It not having been shown to us that he did either, his judgment must be affirmed.

Judgment affirmed.