Hall, J.
1. This court has held that the act of 1881, which. *435 provides that in all cases of voluntary assignments by insolvent debtors for the benefit of creditors, it shall be the duty of the assignor to prepare and attach to the deed or instrument by which the assignment is made, at the time of executing the same, a full and complete inventory and schedule of all the assets of every kind held, claimed or owned by the assignor at the time of the execution of such deed or instrument of assignment, which inventory or schedule shall be sworn to, and which provides that no assignment by insolvent persons, firms or corporations shall be valid unless accompanied by the sworn schedule so required, is a remedial statute, and should be strictly construed as against the assignor and his assignee, and liberally in favor of creditors; and the act of 1885, which requires a full and complete schedule of the creditors of the of the assignor under'oath to be attached to the assigment, being of the same character as the other act, and being in furtherance of the same policy, is subject to the same rules of construction. . Acts-1880-81. p. 174, Code Addenda, p. x, §1953, (d), (e) ; Acts 1884-85, p. 100; 70 Ga., 279 ; Coggins vs. Stephens & Co., (September term, 1884)..
(a) The difference between a schedule which is not full and complete and no schedule at all is a difference in degree only, and should, not vary the application of the rule prescribed by the statute.
2. It is impracticable to lay down any rule-as to what may safely be omitted from such schedules, either by oversight or indavertence and-without any intention to do so on the part of the assignor, or any purpose to mislead creditors by filing a false, deceptive or incomplete-schedule. Generally speaking the requirements of the law and the conditions it prescribes‘should be closely followed ; at least an honest effort-should be made to carry it fully into effect, according to its purport and intent. While the omission from the schedule of some slight or unimportant article, of little or no value, or some one or more creditors whose-claims amount to a trifle, and which would probably be overlooked or forgotten by the most careful, deliberate and painstaking person in preparing his schedule, might not have the effect of invalidating the assignment, yet in a case where creditors claim that assets amounting to nearly $3,000 were omitted, and the assignor concedes, after this omission has been brought to his notice by the evidence adduced on the trial, that assets to the amount of nearly $1,300 were omitted from one schedule, and sundry creditors, whose undisputed demands were shown to aggregate more than $1,000, were omitted from the other, and sought to supply the omission by then amending his schedule in both respects, the claim of slight and inadvertent omissions would hardly avail lo maintain the assignment.
(a) Such assignments, containing preferences, are hurriedly made *436 up and executed, especially since the act of 1881, providing for the filing of a bill and the obtaining of a receiver in case of failure of payment by insolvent traders, which act was approved on the same day as the act relating to voluntary assignments. Acts 1880-81, pp. 124, 125 ; Code §§ 3149 (a) —3149 (g).
J. H. Lumpkin ; John L. Tye; G. W. Bryan, for plaintiffs in error.
James R. Gray; Hall & Hammond ; E. J. Reagan, for defendants.
8. There; is a distinction between the provisions of the act of 1881, relating to the criminal liability of affiant, and those which relate to invalidating the assignment. In the one case, there must be both the act and guilty intent — a wilful violation of the public law, in which there must be a union or joint operation of act and intention or criminal negligence : in the other case this is not necessary, where the question in issue is the validity of the assignment.
(a) The act of 1885 provides for invalidating the assignment for want of a full and complete schedule of creditors, but does not contain a criminal provision. "
(b) No provision is made either by the act of 1881, or by that of 1882, for perfecting a schedule which is not full and complete, and by that means upholding the assignment; and the courts cannot uphold it by reason of such an amendment.
4. A general clause in an assignment conveying to the assignee such property of the assigor as was left out of the schedule of assets does not render the assignment valid, but contravenes the policy of the legislature in enacting the assignment laws; and the law looks with distrust upon such sweeping clauses in deeds, especially where particularity of detail is required.
5. While preferences in assignments are allowed, they are tolerated rather than encouraged, as is manifest from the drift of legislation in this state from 1881 to the present time, and made clear by the provisions of the act of 1885.
'-.(a) The act of 1885 carried fully into effect the policy proclaimed in §§1945, 1946 of the Code, as well as in art. 1, sec. 2, par. 6, of the Constitution of 1877 ('Code, §5023), by throwing wide the doors of courts of equity to creditors of every class and description, whether they have a lien or not, and inviting them to enter and avail themselves of its remedial process and aid, that facilities may be afforded them to detect, defeat and annul every effort to defraud them out of their just rights, and that they may be enabled to reach the property concealed from them by their debtors.
(b) The deed of assignment in this case must be set aside, and the refusal to grant an injunction and receiver reversed.
Judgment reversed.